UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LOU SENEY,

               Plaintiff,

                                          Case Number 07-13543-BC

v.                                        Honorable Thomas L. Ludington

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

               Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AFFIRMING ERISA ADMINISTRATIVE DECISION AND DENYING PLAINTIFF'S MOTION TO REVERSE ADMINISTRATOR'S DECISION

Plaintiff Lou Seney ("Plaintiff"), a former patient accounts clerk at MidMichigan Medical Center ("MMMC"), brought this action to reverse Defendant Unum Life Insurance Company of America ("Defendant") determination terminating Plaintiff's long-term disability benefits. As a benefit of her employment, Plaintiff participated in a disability insurance plan, an employee welfare benefits plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, administered by Defendant. According to Plaintiff's treating physicians, Plaintiff suffers from panic disorder with agoraphobia, insomnia, and depression. Defendant terminated Plaintiff's disability benefits, concluding that Plaintiff's medical records did not continue to demonstrate that she was "disabled" under the definition of the plan. Plaintiff appealed Defendant's determination, but Defendant upheld its denial of benefits after reviewing supplemental medical records. Plaintiff seeks review of that decision in this Court. 29 U.S.C. § 1132(a)(1)(B).

The Court has considered the parties' submissions and concludes that Defendant's denial of benefits was not arbitrary and capricious. The Court will **GRANT** Defendant's motion for judgment

affirming ERISA benefit decision [Dkt. # 10] and **DENY** Plaintiff's motion for summary judgment to reverse Defendant's ERISA determination [Dkt. # 9].

Although the cross motions were scheduled for hearing before this Court on May 14, 2008, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the briefs. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

As stated above, Plaintiff served as a patient accounts clerk at MMMC. *See e.g.* Administrative Record [AR] at 32. On January 23, 1998, Plaintiff enrolled in Defendant's long-term disability benefits program. AR at 35. Apparently, Plaintiff was absent from her employment beginning October 9, 2002 due to depression, agoraphobia, and other mental ailments. AR at 52. The record demonstrates that medical providers issued "excuse slips" for Plaintiff to be absent from work due to illness on October 14, November 12, 13, and 26, and December 11 of 2002. AR at 22-26. On December 13, 2002, MMMC's human resources specialist filed an employment statement requesting disability benefits for Plaintiff. AR at 36. On January 8, 2003, Plaintiff submitted to Defendant a claim for disability benefits. AR at 2-7. Plaintiff explained that an inability to concentrate impeded her ability to perform her occupational duties. AR at 7. MMMC terminated Plaintiff's employment on January 10, 2002 for apparently not submitting paperwork demonstrating she remained unable to work. AR at 53.

Plaintiff reported problems with anxiety and nervousness on September 11, 2002. AR at 79. Dr. Carmen Cudiamat noted Plaintiff's "significant personal problems" arising from her relationship

with a "household member." *Id.* At the consultation, Plaintiff indicated that she did not believe long-term medication treatment would be necessary. *Id.* Dr. Cudiamat prescribed Xanax. *Id.*

On October 9, 2002, Dr. Cudiamat examined Plaintiff in a follow-up consultation. AR at 80. Plaintiff reported that her condition had worsened such that it had affected her ability to function properly at work. *Id.* Dr. Cudiamat prescribed Paxil CR to address Plaintiff's "[m]ajor depressive disorder with anxiety symptoms." *Id.* He recommended that Plaintiff receive treatment from a psychologist and take a leave of absence from work. *Id.*

At an October 20, 2002 follow-up visit, Dr. Cudiamat noted that Plaintiff's condition had not improved. AR at 81. Dr. Cudiamat again encouraged Plaintiff to begin counseling or therapy and prescribed Effexor XR. *Id.* Dr. Cudiamat also observed that Plaintiff's condition had not improved at follow-up visits on November 13 and 26, 2002, December 31, 2002, and January 28, 2003. AR at 82-86.

On January 9, 2003, Plaintiff received care from psychiatrist Dr. Kerry Pierce. AR at 11. Dr. Pierce found that Plaintiff was "very anxious, depressed, tearful, and unfocused." *Id.* Plaintiff's symptoms were noted as "high anxiety, depression, insomnia, anorexia, weight loss, paranoia, [and] poor concentration." *Id.* Dr. Pierce concluded that Plaintiff's symptoms hindered her ability to work productively, but believed that Plaintiff could "hopefully" return to work in 90 days. *Id.*

Dr. Pierce opined that Plaintiff's depression resulted from the deterioration of a romantic relationship. AR at 62. Dr. Pierce increased the Effexor dosage, prescribed Zyprexa, and offered the following diagnosis:

> Major Depression, single episode with high anxiety state; moderate to severe symptoms. Also, psychosis, not otherwise specified. She appears to have some paranoia due to the current situational stressors, along with sleep deprivation. She does not appear to have any sort of mood congruent delusions or auditory or visual

hallucinations otherwise. Much of this could be due to adjustment disorder, chronic type, with depressed mood and anxiety and sleep disturbance.

AR at 61. Lastly, Dr. Pierce "strongly encourage[d]" Plaintiff to seek additional counseling from a psychiatrist. AR at 60.

On January 22, 2003, Defendant spoke with Plaintiff. AR at 65-69. Plaintiff indicated that she enjoyed her employment, but had friction with a co-worker (whom Plaintiff was living with). AR at 67-68. Plaintiff also indicated that she had attempted to work as a hair stylist, but did not continue the employment. *Id.*

On January 23, 2003, Defendant issued a letter requesting "detailed information regarding [Plaintiff's] restrictions and limitations and requirements of [her] occupation." AR at 51. The letter also indicated that Defendant sought additional medical information from Dr. Pierce and Dr. Cudiamat. AR at 51. On February 17, 2003, Defendant extended the time to resolve Plaintiff's claim because it had not received medical records from Dr. Pierce. AR at 57.

On January 30, 2003, Dr. Pierce examined Plaintiff. AR at 63. Plaintiff reported a "slight improvement" in her mood, but still felt anxious. *Id.* Plaintiff felt "extremely anxious around people and crowds." *Id.* Dr. Pierce noted that Plaintiff's anxiousness improved from previous visit and no evidence of psychosis existed. *Id.* Plaintiff had yet to acquire treatment from a psychiatrist. *Id.* Dr. Pierce diagnosed Plaintiff with "major depression, single episode with high anxiety state, near panic at times." *Id.*

On April 21, 2003, Defendant requested a clinical review of Plaintiff's claim. AR at 88-89. The review concluded that the record supported a diagnosis of major depression, but did not clearly support a diagnosis of psychosis. AR at 90.

On May 15, 2003, Defendant notified Plaintiff that it had approved Plaintiff's request for disability benefits. AR at 96. Defendant informed Plaintiff that she needed to have her physician certify her continuing disability on a monthly basis, or benefits may be terminated. AR at 95.

On June 12, 2003, Dr. Syed diagnosed Plaintiff with panic disorder with agoraphobia and depression. AR at 103. Apparently, Plaintiff provided a copy of Dr. Syed's progress note to Defendant as certification that she remained disabled. *Id.*

On February 9, 2004, Defendant issued a letter suspending Plaintiff's benefits because Plaintiff had not submitted the required monthly certifications. AR at 146. Plaintiff had only submitted a single physician certification, presumably the June 12, 2003 Dr. Syed progress note. *Id.* Defendant requested that Plaintiff submit certification within thirty days, or Defendant would terminate the benefits. *Id.*

In response, Plaintiff provided Dr. Syed's progress notes from July 2003, September 2003, November 2003, and February 2004. AR at 164-76. Each of these progress notes contained a diagnosis of panic disorder with agoraphobia and depression. AR at 173-176. The July 24, 2003 note indicates that Plaintiff displayed symptoms of insomnia and paranoia. AR at 176. Plaintiff reported, however, that her medication was improving her paranoia. *Id.*

On September 9, 2003, Plaintiff reported that she had been "doing quite well since her last evaluation." AR at 175. Moreover, Plaintiff "report[ed] the medication to be fairly effective, not having a lot of complaints and did not make demands for more medication . . . She reports to be sleeping well with no significant problem with appetite." Dr. Syed reached the following conclusion:

> When seen today, the patient was an alert, pleasant, coherent, relevant, fairly relaxed female who appeared to be calm without too much anxiety or restlessness. She

denies any affective symptomatology. No psychomotor retardation or agitation.

*Id.* Dr. Syed also noted that Plaintiff was residing with a new friend, and that the relationship was going "quite well." *Id.*

On November 13, 2003, Plaintiff again reported "to have been doing quite well since her last evaluation." AR at 174. Dr. Syed noted that Plaintiff's issues with insomnia returned, as she recently had trouble sleeping more than four hours a night. Plaintiff also complained feeling anxious and paranoid when in public places. Dr. Syed noted that Plaintiff remained fearful with "quite a bit of anxiety," though Plaintiff was "feeling better."

Dr. Syed's final progress note indicates that Plaintiff was doing "fair[]," but was having trouble sleeping. AR at 173. Dr. Syed did not find any indications of psychosis or delusions. *Id.* Plaintiff, however, still exhibited signs of insomnia, sleeping only three to four hours a night. *Id.*

Nora Moore, R.N. ("Moore"), reviewed Plaintiff's medical records on behalf of Defendant. AR at 201-06. Moore summarized Dr. Syed's records as follows:

> Per the treatment notes provided by Syed, [Plaintiff] has been seen for medication management x 4 from 7/24/03- 2/10/04. Records indicate that she was seen- q 6 weeks, early on in her treatment, with present frequency of q 3 months. The AP has indicated that [Plaintiff's] primary complaints have centered around her sleep disturbance and anxiety, which appears to have been precipitated by relationship issues. [Plaintiff] reportedly moved to another town, in order to remove herself from the situation and has been residing with another friend. *She has continued to report difficulties with anxiety, although the AP has noted that her complaints are frequently of a vague, and nonspecific nature. Although [Plaintiff] has complained of continued anxiety, it would appear that she has returned to her baseline level of functioning. She has not participated in psychotherapy to date, that I can tell. Results of the MSE are WNL, and the records fail to reflect the presence of symptoms, which would preclude the insured from RTW in her vocation.*

AR at 206 (emphasis added). Moore concluded that Dr. Syed's notes did not indicate any symptoms or conclusions that supported a finding that Plaintiff was unable to perform her employment duties. *Id.*

Dr. Peter Brown, a psychiatrist, also reviewed Plaintiff's records on behalf of Defendant. AR at 207. Dr. Brown noted that Dr. Syed's notes indicate "substantial . . . improvement." *Id.* Dr. Brown also noted minimal indication of symptoms except for sleep-related issues. Dr. Brown concluded as follows:

> [Plaintiff] has a chronic psychiatric condition characterized by dysphoria and complex interpersonal relationships. The full diagnosis is not well-established. There is no support for restrictions or limitations beyond the first week of September 2003. Treatment by sporadic visits and medication management alone is consistent with a disorder of mild to moderate severity.

*Id.*

On April 5, 2004, Defendant issued a letter terminating Plaintiff's benefits in September of 2003. AR at 213-16. Defendant relied on the findings and conclusions of the records reviews of Moore and Dr. Brown. *Id.* Defendant concluded that Plaintiff's records did not demonstrate her mental ailments required restrictions or limitations that rendered her disabled. *Id.*

On April 15, 2004, Plaintiff submitted a written notice of appeal with Defendant. AR at 230. Plaintiff supplemented her medical records with the progress notes of psychiatrist William Mankel, M.D. AR at 231. Dr. Mankel noted as follows:

> [Plaintiff] . . . is on Social Security Disability and has been taken off of Workman's Compensation after she started developing panic attacks a year ago and depression, which started even some years before that. She says that she is still having panic attacks about every 2 days and is afraid to leave the house without a partner or someone to drive her anywhere she needs to go. She said the onset occurs in less than 10 minutes with tachycardia, tremors, palpitations, shortness of breath and fear that something bad will happen. Duration is usually anywhere from 15-60 minutes. She is on 25 mg of Lexapro without any positive effects on the panic attacks. She

> has difficult (sic) falling asleep, nightmares and then wakes up early. That has been going on for 2-3 months, ever since her Workman's comp has been cut off and she has been under more financial pressures. She takes Neurotin 200 mg, 1 three times a day, with maybe minimal effects on any of her anxiety. She has difficulty falling asleep and staying asleep, as I mentioned earlier. She also has a loss of weight, a lack of appetite, loss of interest, loss of motivation to do things, loss of sexual drive, trouble concentrating, trouble remembering recent events, diminished sense of hope regarding her future, crying frequently throughout the day, irritability and the lack of pleasure in things that normally make her pleasurable. She is not suicidal, however.

*Id.* Dr. Mankel diagnosed Plaintiff with panic disorder with agoraphobia and major depression. *Id.* Dr. Mankel also gauged Plaintiff's Global Assessment of Functioning ("GAF") score of 65 out of a possible 100. *Id.*

On May 26, 2004, Christa Young, R.N., reviewed Plaintiff's records, including Dr. Mankel's notes. AR at 270-74. Young concluded that Plaintiff's records did not support the conclusion that she was functionally impaired. AR at 274. Additionally, Young believed that Plaintiff's level of treatment was inconsistent with a severe, work-impairing mental illness. *Id.* Young noted Plaintiff reported symptoms to Dr. Mankel that had not been previously documented. AR at 273. Young also pointed out that a GAF score of 65 is consistent with "some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning pretty well." *Id.* Finally, Young observed that Plaintiff's sporadic treatment was "not consistent with a severe, acute psychiatric condition." *Id.*

On June 17, 2004, George M. Dominiak, M.D., Defendant's Medical Director in Psychiatry-Appeals, also performed a review of Plaintiff's records. AR at 284-85. Dr. Dominiak concluded Plaintiff's records did not support impairment after February 7, 2004. AR at 285. He reasoned as follows:

> From the records of Dr. Syed there is no evidence of severe impairing symptoms through 02/07/04. The note of Dr. Mankel describes multiple symptoms[,] but rates [Plaintiff] as quite functional (GAF 65)[,] inconsistent with the symptoms described. Also[,] his treatment is not aggressive and does not address the symptoms directly with focused psychotherapy.

*Id.* Dr. Dominiak also concluded that Plaintiff's treatment is inconsistent with a severe, work-impairing illness, noting as follows:

> Though Panic Disorder with agoraphobia can often be impairing, from the records of Dr. Syed, [Plaintiff's] symptoms were not severe and globally impairing. The treatment was every few months until Dr. Mankel's treatment began with suggested monthly visits. This is not consistent with a severe[,] active panic disorder and depression. It is consistent with mild to moderate symptoms and a GAF of 65. If the condition was severe[,] there would be 1 or 2 medication visits monthly and 2-4 psychotherapy visits monthly to address anxiety and depression management.

*Id.*

On June 28, 2004, Defendant affirmed its earlier decision and terminated Plaintiff's benefits. Defendant came to the following conclusions:

> Our medical staff on appeal concluded that the available medical information did not support psychiatric impairment as of the effective date your benefits were terminated on February 7, 2004. From the records of Dr. Syed, your symptoms were not severe and globally impairing as of the time your benefits were terminated. Furthermore, your treatment level at least prior to seeing Dr. Mankel was not consistent with a severe active panic disorder and depression. If your condition were severe, one to two medication visits monthly and two to four psychotherapy visits monthly to address anxiety and depression management would be expected.

AR at 289. Ultimately, Defendant concluded that the record did not support restrictions or limitations on Defendant's employment. *Id.*

Plaintiff attempted to supplement her claim with additional medical records, but Defendant refused to consider those medical opinions. AR at 302-03. In its June 28, 2004 denial, Defendant instructed Plaintiff to supplement the record within forty-five days of the denial. AR at 289-90.

-9-

Plaintiff attempted to supplement the record outside that period, but Defendant refused to consider the late-submitted information because it was submitted late. AR at 319, 323.

The instant disability plan defines disabled as follows:

'Disability' and 'disabled' mean that because of injury or sickness:

> 1. the insured cannot perform each of the material duties of his regular occupation; and
>
> 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings; or
>
> 3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>
>> a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
>>
>> b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

AR at 254. Moreover, the plan contains a "mental illness limitation," which provides that benefits for mental illness shall not exceed twenty-four months unless the insured is hospitalized or institutionalized due to the mental illness. AR at 260.

II

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that the arbitrary and capricious standard of review applies to Defendant's termination of benefits. *See* Dkt. # 8 at 2. This highly deferential review is appropriate when the ERISA-

regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with using a rubber stamp – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). A court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Id.* The Court's review, thus, is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

Additionally, courts have seen fit to consider other administrative decisions: "[a social security] determination, though certainly not binding, is far from meaningless." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). In *Glenn*, 461 F.3d at 668-669, the Sixth Circuit treated a plan administrator's failure to consider a social security decision of disability and its grant of benefits as a significant factor when reviewing the plan administrator's decision. Although the standards applicable to ERISA cases do not equate with the standards applicable to social security cases, a finding of disability within a social security context indicates that at least one entity concluded that medical evidence did support a finding of disability.

Furthermore, courts "must take into consideration [a plan administrator] is acting under a potential conflict of interest because it is both the decision maker, determining which claims are covered, and also the payor of those claims." *Calvert*, 409 F.3d at 292 (citing *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Though the arbitrary and capricious standard "remains unchanged," courts should still consider the conflict of interest when "applying the standard." *Id.* (emphasis omitted). Thus, courts may consider a variety of factors in reviewing whether a plan administrator's determination was arbitrary and capricious.

III

Upon review of the record, Defendant's determination was not arbitrary and capricious. Though the record demonstrates that Plaintiff is afflicted with legitimate mental health issues, the determination Plaintiff is not disabled under the meaning of the plan is supported by the record. Defendant's determination relies on the following two conclusions: (1) the record did not demonstrate that Plaintiff's symptoms after September of 2003 were so severe as to render Plaintiff

unable to perform the material duties of her occupation and (2) Plaintiff's course of treatment did not support a finding that she was disabled under the meaning of the plan.

Defendant's first conclusion appears reasonable. In September of 2003, Dr. Brown concluded that Dr. Syed's progress notes from July of 2003 through February of 2004 indicate "substantial . . . improvement." Dr. Brown's characterization is reasonably supported by the content of the progress notes. Dr. Syed noted that Plaintiff was doing "quite well" and that her personal relationships had improved. Though Plaintiff still experienced anxiety and some sleeping problems, Plaintiff reported feeling better. Dr. Syed concluded that Plaintiff was doing "a lot better" overall. Dr. Mankel's April 15, 2004 progress note certainly outlines Plaintiff's illnesses in greater detail than Dr. Syed. As Defendant noted, however, Dr. Mankel rated Plaintiff with a GAF score of 65, which indicates that she is mildly to moderately impaired.

Next, Defendant concluded that Dr. Mankel's findings were not supported by the record. Dr. Dominiak concluded that before seeking treatment from Dr. Mankel, Plaintiff's course of treatment "was not consistent with a severe active panic disorder and depression." The record demonstrates that Plaintiff was not actively receiving psychotherapy and that she received prescription medication during her monthly to quarterly physician consultations. Moreover, Dr. Dominiak's conclusion was shared by that of Young, Moore, and Dr. Brown. Defendant's reliance on this conclusion was not arbitrary and capricious.

In her motion to reverse the determination, Plaintiff offered the following three reasons that Defendant's determination was arbitrary and capricious: (1) Plaintiff's treating physician's opinions should be accorded more weight than Defendant's non-treating medical reviewers; (2) Defendant's medical reviewers have an inherent conflict of interest that demonstrates the determination was

biased; and (3) the Social Security Administration's ("SSA") determination that Plaintiff is disabled demonstrates that Defendant's decision was arbitrary and capricious. These arguments are unpersuasive.

First, Plaintiff contends that Defendant should accord the medical opinions of Plaintiff's treating physicians more weight than other evidence. Defendant points out, and Plaintiff acknowledges, that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Nonetheless, Plaintiff suggests that the Court should apply the "common sense" principal that an administrator should place more emphasis on the opinions of treating physicians. The record indicates that Defendant has done so in this case. Based on the opinions of Plaintiff's physicians, Dr. Cudiamat and Dr. Pierce, Defendant found Plaintiff to be disabled under the plan. Moreover, Defendant continued to allow Plaintiff to receive benefits even though Plaintiff did not provide monthly physician certifications. Moreover, Dr. Syed's progress notes indicated improvement in Plaintiff's condition. Defendant also relied on the documentation of Plaintiff's course of treatment contained in Plaintiff's medical records. Ultimately, there is no indication that Defendant did not give proper consideration to the medical opinions of Plaintiff's treating physicians.

Second, Plaintiff asserts that Defendant's decision is biased because of the conflict of interest inherent to Defendant's medical reviewers. Though the Court acknowledges that conflict of interest is a consideration, *see Calvert*, 409 F.3d at 292, it does not appear to be a factor here. As it suggests, Defendant has not appeared to act in its own self-interest in the instant matter. Again, Defendant

originally found Plaintiff disabled and awarded benefits. Plaintiff did not, however, fulfill her obligation to provide monthly physician certifications. The record indicates that she only provided a single certification over a six month period. Though Defendant retained the right to suspend or terminate Plaintiff's benefits, it chose to allow Plaintiff an opportunity to provide certifications. From those supplemental records, Defendant determined that the record indicated that she was no longer disabled in September of 2003. Plaintiff received, however, benefits until February of 2004. Ultimately, Defendant paid approximately one half of the total possible benefits under the policy (unless Plaintiff was hospitalized). Plaintiff has not demonstrated bias in Defendant's determination.

Third, Plaintiff suggests that Defendant ignored the SSA's determination that Plaintiff is disabled. Though the Court agrees with the proposition that an SSA determination of disability supports an administrator's denial of benefits to be arbitrary and capricious, *see Calvert*, 409 F.3d at 294, it is inapplicable here. As Defendant points out, the Court is bound to the contents of the administrative record. *See Wilkins*, 150 F.3d at 618. Defendant contends that Plaintiff never submitted a determination by the SSA, and Plaintiff does not indicate that she did so. Moreover, the Court's review of the administrative records only yielded a tangential reference to an SSA determination in Dr. Mankel's April 15, 2004 progress note. This reference is insufficient to find Defendant's determination arbitrary and capricious. Thus, the Court will grant Defendant's motion affirming the determination and deny Plaintiff's motion.

IV

Accordingly, it is **ORDERED** that Defendant's motion for judgment affirming ERISA benefit decision [Dkt. # 10] is **GRANTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment to reverse Defendant's ERISA determination [Dkt. # 9] is **DENIED**.

                                                    s/Thomas L. Ludington  
                                                    THOMAS L. LUDINGTON  
                                                    United States District Judge

Dated: May 14, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 14, 2008.

                              s/Tracy A. Jacobs  
                              TRACY A. JACOBS